606 A.2d 655

**AMERICAN INSURANCE COMPANY, (FIREMAN'S FUND INSURANCE CO.), Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (BARNHART), Respondent.**

**AERO TRUCKING, INC., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (BARNHART), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided March 30, 1992.

James S. Ehrman, for petitioner, American Ins. Co.

Richard V. Sica, for cross-petitioner, Aero Trucking, Inc.

Stephen P. McCloskey, for respondent.

Before CRAIG, President Judge, PELLEGRINI, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

American Insurance Company (American)/Fireman's Fund Insurance Company (Fireman's Fund)[1] and Aero Trucking, Inc. (Aero Trucking) file separate appeals from an Order of the Pennsylvania Workmen's Compensation Appeal Board (Board) which granted James M. Barnhart (Claimant) workmen's compensation benefits.

In January of 1985, Claimant filled out a job application to drive a tractor-trailer for Washington Leasing Company (Washington Leasing), a truck leasing company located in Washington, Pennsylvania and owned and operated by Francis and Inez McCauley. As was the normal procedure, Claimant was taken to a terminal owned by Aero Trucking, Inc. (Aero Trucking) in Monroeville, Pennsylvania to take a PennDOT examination. After passing the examination, Claimant signed a contract to drive a Washington Leasing tractor-trailer as an independent contractor and haul freight for Aero Trucking, receiving 20% of the weekly gross receipts.

Washington Leasing had been doing business with Aero Trucking for nearly 30 years and was a commissioned agent for Aero Trucking. Washington Leasing leased tractor-trailers and brokered its drivers only to Aero Trucking. Aero Trucking is a corporation in the business of hauling freight via tractor-trailers and has numerous terminals in the Eastern United States. Because all of Washington Leasing's trucks haul for Aero Trucking and it is a commissioned agent, Washington Leasing's terminal in Washington, Pennsylvania is essentially an Aero Trucking terminal. (37a; 530a; 572a).[2]

In 1984, Mr. Robert Cox, who had worked several years for Aero Trucking as a claims adjuster and Safety Director, formed Truck Services, Inc. (Truck Services), a corporation solely in the business of attempting to supply workmen's compensation insurance to independent truck drivers.

1. American is a subsidiary of Fireman's Fund.

2. The numbers in the parentheses refer to pages of the Reproduced Record.

(232a; 354a–59a; 415a–21a). Truck Services did not own any equipment and shared office space with Aero Trucking in Dover, Delaware. (383a–90a; 397a–98a). Cox repeatedly testified that the sole purpose of Truck Services was to obtain workmen's compensation insurance for independent drivers. (357a; 364a; 381a; 385a; 428a).

Cox testified that in order to obtain this insurance coverage, he contacted John Brownlee, President of Underwriters Services. Underwriters Services is an independent insurance brokerage firm which knew the exact nature of Truck Services' business. (164a–68a; 369a). Brownlee, after unsuccessfully trying to obtain the desired coverage from several companies,[3] applied on March 15, 1986 for such coverage under the Delaware Workmen's Compensation Insurance Plan. Delaware assigned the risk to Fireman's Fund which assigned it to its subsidiary, American. A policy was then issued to Truck Services on March 23, 1986 for a one year period. The policy was written to cover both "Truckmen" and "Clerical" employees of Truck Services. (177a; 213a–14a; 764a–74a).

Once the workmen's compensation coverage was obtained from American, Cox contacted Mr. Ed Conto, President of Aero Trucking to tell him that he had found workmen's compensation coverage for the independent drivers of Aero Trucking. (230a–32a). On February 18, 1987, Conto testified that he sent a letter to all drivers of Aero Trucking, including Claimant, informing them that the workmen's compensation insurance coverage they had been requesting could now be available to them through Truck Services.

Conto's letter stated in relevant part:

Dear Independent Contractor:

Enclosed please find new leases and brokerage agreement which *we have devised in order to have you, as an independent contractor, be eligible for Workmen's*

---

**3.** Brownlee initially obtained workmen's compensation insurance from Westmoreland Casualty, a Pennsylvania company, but did not renew it apparently because of the financial problems of Westmoreland Casualty. (168a–70a).

*Compensation.* As of now, you are not covered by Workmen's Compensation and it is my opinion, for your protection and your family's protection, (if you are married or have similar responsibility), you should be covered.

We have devised this coverage, via Truck Services, Inc. and the Brokerage Agreement. This coverage will not cost you a *thin dime.* (Emphasis in original.) Cost of same will be absorbed by Aero Trucking, Inc. and Truck Services, Inc. Before we get into the procedures, as you know, even though you needed this protection, *you couldn't purchase it legally since you are an independent contractor,* since the authorities took and are taking the position you are in a "self-employed status" and a one truck operator.

We have been negotiating over a long period of time to get this coverage for you and finally have accomplished it. You probably don't realize the cost of this coverage, but it is quite expensive. For now, there *will not be* any change in your percentage of *revenue.* (Emphasis in original.) ...

Please sign all documents.... When you receive payment for your services you will receive checks *in the same envelope from both Aero Trucking, Inc. and Truck Services, Inc.* for the same load/or loads; the total of both checks combined will be equivalent to the percentage amount you would have received previously under your old leases....

I believe you can now *see the wisdom* of the new leases and brokerage agreements.... Please send these forms back immediately so that we can complete your coverage as, frankly, *you have been running in the rain drops long enough.*

(328a). (Emphasis added.)

As a result of Truck Services successful attempt to obtain workmen's compensation coverage for Aero Trucking's drivers, new lease and brokerage agreements were signed. Prior to the time that Truck Services came into the picture, Washington Leasing had an agreement with Aero Trucking

to supply both tractor-trailers and drivers. With Truck Services now involved, Washington Leasing entered into a new lease agreement with Aero Trucking to provide all of their tractor-trailers to Aero Trucking. 246a; 335a–36a; 530a). Washington Leasing then entered into a separate brokerage agreement with Truck Services whereby Truck Services would act as a broker for all of Washington Leasing's drivers. (280a; 342a; 365a; 547a).

Truck Services then entered into a brokerage agreement with Aero Trucking to provide Aero Trucking with the drivers it brokered for Washington Leasing. (234a–35a; 329a–31a; 365a–66a). This agreement also provided that Truck Services "will meet all requirements and conditions, *including Workmen's Compensation,* as an independent contractor and will comply with all applicable rules and regulations of any duly constituted governmental authority with respect to such services." (330a).

The outcome of this new arrangement was that Washington Leasing would broker all its drivers to Truck Services which would in turn provide them with workmen's compensation insurance and broker them to Aero Trucking. At the same time, Washington Leasing would lease all their tractor-trailers directly to Aero Trucking where truck and driver would again meet as one.

On February 27, 1987, Fireman's Fund sent a letter to Truck Services informing them that the policy would be renewed for another one year period upon Truck Services' payment of the one year premium of $38,085.00, which Truck Services did. (666a–67a; 675a; 762a–74a). On March 25, 1987, Underwriters Services issued a Certificate of Insurance to both Truck Services and Aero Trucking informing them that the workmen's compensation policy had been renewed for another year. The Certificate indicated that Truck Services was the insured and that the certificate holder was the Lessors of Aero Trucking operating on behalf of Aero Trucking. (235a–36a; 332a; 723a–24a).

In May of 1987, Fireman's Fund conducted an audit on the policy issued by its subsidiary, American, to Truck Services. During the audit, the commission ledgers of Washington Leasing were examined in order to determine the amount of payroll to use in calculating the premium. An audit report was prepared by Fireman's Fund which stated that the operation of Truck Services was to "supply drivers to Aero Trucking Company which is another entity owned by President Cox." [4] (717a; 775a–77a). The audit report also specifically named the Claimant as a payroll employee of Truck Services. (374a; 777a).

On July 13, 1987, Claimant suffered severe injuries when his tractor-trailer went off the road while he was trying to avoid a head-on collision with an oncoming vehicle which was in his lane. A claim was submitted on behalf of the Claimant for benefits but was denied by Fireman's Fund on August 17, 1987, because Claimant's injury "d[id] not fall within the terms of the Delaware Workmen's Compensation Act." (736a). American claimed that there were two reasons for the denial: one, Claimant was not an employee of Truck Services and two, the policy only covered drivers whose home terminal was in Delaware and Claimant's home was in Pennsylvania.

On October 5, 1987, Fireman's Fund notified Truck Services that its workmen's compensation policy with American terminated for non-payment. (763a). Cox testified that Truck Services then went out of business because "it could no longer obtain workmen's compensation insurance for drivers and independent contractors that were leased from motor carriers." (359a).[5]

---

**4.** This statement seems to be incorrect. There is no evidence in the record that Cox has ownership in Aero Trucking. In fact it is specifically denied. (236a–37a).

**5.** The saga continues. Shortly after Truck Services went out of business, Cox started Lessors Truck Services and again obtained workmen's compensation with the help of Underwriters Services, this time under the Indiana Assigned Risk Plan. This coverage is also supposed to cover the independent drivers of Aero Trucking. (409a–10a).

On September 8, 1987, Claimant filed a Claim Petition seeking workmen's compensation benefits and naming Washington Leasing as his employer. Truck Services, Aero Trucking and American/Fireman's Fund were all joined in the action. The Referee issued a Decision on February 22, 1988, awarding Claimant benefits. The Referee found that Claimant was an employee of Aero Trucking, which, because of its actions, could not deny the existence of an employer-employee relationship. The Referee also found that the policy issued by American/Fireman's Fund to Truck Services covered the Claimant due to Truck Services' relationship with Aero Trucking. Aero Trucking and American/Fireman's Fund appealed to the Board which affirmed the Referee's Decision. Aero Trucking and American/Fireman's Fund now appeal the Board's Order.

Aero Trucking and American/Fireman's Funds contend that the Board erred when it determined that Claimant was an "employee" of Aero Trucking because Claimant himself admits that he was an independent contractor and the routes he drove were up to him. (44a; 535a; 542a–43a; 553a). *See Red Line Express Company v. Workmen's Compensation Appeal Board (Price)*, 138 Pa.Commonwealth Ct. 375, 588 A.2d 90 (1991). However, we need not reach the issue of whether any of the three companies involved exercised the degree of control necessary to classify him as an employee because Truck Services is estopped from denying that an employer-employee relationship existed because of its actions in telling Claimant and the other companies involved that Claimant was in fact covered under Truck Services' workmen's compensation policy.

The evidence suggests that Washington Leasing actually paid for most of the coverage, with Truck Services making a profit for its arrangement of the coverage. Truck Services would pay the actual premiums to American, which amounted to approximately $75,000.00 over the year and a half the coverage was in effect. (427a). Aero Trucking would then pay Truck Services for the premiums and for providing this coverage to its drivers. (263a; 297a–98a).

Aero Trucking would then recoup much of the money it paid Truck Services by deducting a certain amount from payments it made to Washington Leasing for the use of its tractor-trailers.[6]  (547a–48a;  558a;  587a).

Not only was the coverage being provided and paid for in the name of Truck Services, Truck Services led the Claimant, Aero Trucking and Washington Leasing to believe that Claimant was in fact covered.  Claimant testified that he was told by Washington Leasing that he was covered by workmen's compensation. (33a–34a).  Washington Leasing was told by Truck Services that the drivers were covered by Truck Services' policy. (546a–47a; 556a).  Claimant also testified that he was told by Mr. Cox of Truck Services following the accident, that he was entitled to recover. (28a; 32a).  Aero Trucking also stated it believed that Claimant was covered by workmen's compensation. (235a–36a).  Because Truck Services obtained and paid for a workmen's compensation policy and led the Claimant to believe that the policy covered him, Truck Services cannot now contend that an employer-employee relationship does not exist between it and the Claimant.

In *Red Line*, 138 Pa.Commonwealth Ct. at 386, 588 A.2d at 96, we quoted from our earlier decision in *Maurer v. Workmen's Compensation Appeal Board (American Trans Freight, Inc.)*, 116 Pa.Commonwealth Ct. 224, 228, 541 A.2d 436, 438 (1988), where we stated that "one important fact prevents ... [lessor] from denying the existence of an employer-employee relationship— ... [Lessor] provided workmen's compensation coverage to the Claimant."  In the present situation Truck Services, as a broker of drivers, provided Claimant with workmen's compensation insurance.  Likewise, Truck Services cannot now complain that an employer-employee relationship does not exist.

**6.** Washington Leasing stated that it had approximately $58,000.00 deducted by Aero Trucking for workmen's compensation coverage. The discrepancy between this amount and the $78,000.00 in premiums purportedly paid is not readily discernable from the record.

As for American and Fireman's Fund, they issued the policy to Truck Services and must stand in Truck Services' shoes and cannot now deny that the policy covered the Claimant. If American and Fireman's Fund has a contractual dispute over the terms of the policy they may bring their own action against Truck Services. Such contentions cannot be raised in this proceeding to prevent Claimant from receiving workmen's compensation benefits. American and Fireman's Fund must pay the benefits under the policy and seek redress of their contentions elsewhere.

Moreover, Fireman's Fund conducted an audit at which time it was exposed to the information concerning the contractual relations of the three companies. It could have easily discerned the nature of Truck Services' business and whether it could legally supply coverage to them. American, which issued the policy and accepted nearly $75,000.00 in premiums, cannot now complain that none of the workers that the policy purportedly covered are in fact covered. If Fireman's Fund and American made a mistake by issuing the policy, they cannot use that unilateral mistake to deny Claimant the benefits to which he is entitled.

Accordingly, we will affirm the Order of the Board.

## ORDER

AND NOW, this 30th day of March, 1992, the Order of the Pennsylvania Workmen's Compensation Appeal Board dated December 14, 1990, is affirmed.

This matter was argued before a panel consisting of Judge PELLEGRINI, Judge BYER and Senior Judge NARICK. Because of the conclusion of Judge BYER's service the case was resubmitted on briefs, with President Judge CRAIG replacing Judge BYER as a member of the panel.