## TRI–UNION EXPRESS and Liberty Mutual Insurance Company, Petitioners,

v.

## WORKERS' COMPENSATION APPEAL BOARD (HICKLE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 26, 1997.

Decided Nov. 13, 1997.

---

Terry L.M. Bashline, Pittsburgh, for petitioners.

No appearance entered for respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Tri–Union Express and Liberty Mutual Insurance Company (employer) appeal from an order of the Workers' Compensation Appeal Board affirming a decision of a workers' compensation judge (WCJ). The WCJ granted William Hickle's (claimant) claim petition and ordered that claimant be paid compensation benefits from October 19, 1993 through and including March 30, 1994, that benefits be suspended from March 31, 1994 through and including July 19, 1994, and that benefits be terminated effective July 20, 1994.[1]

The sole issue raised in this appeal is whether employer was bound to provide workers' compensation benefits under the Pennsylvania Workers' Compensation Act[2] (Act) because of alleged representations made by a third party agent that the claimant, an independent contractor, would be provided with workers' compensation insurance coverage.

The relevant facts in this matter, as found by the WCJ, are as follows:

*First:* The Claimant, William Hickle, on November 18, 1993, filed a Claim Petition against [employer] alleging that the Claimant injured his neck and back in the course of his employment with [employer] on October 19, 1993 and was disabled as a result of those injuries.

\* \* \* \* \* \*

*Third:* An answer was filed to the Claim Petition on December 27, 1993 by [employer] denying the allegations contained in the Claim Petition.

*Fourth:* The issues regarding this Petition are:

A) Whether the Claimant was an employee of [employer].

B) Is the Determination of whether there is an Employee–Employer relationship affected if [employer] or its agents advised the Claimant that the Claimant would be covered by Workers' Compensation Insurance.

C) To what extent the Claimant was disabled from the October 13, 1993

---

**1.** By order of this court dated September 23, 1997, claimant was precluded from filing a brief in this matter.

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

injuries.[3]

*Fifth:* In rendering this decision, this [WCJ] has considered the testimony of the Claimant and Patricia Parchem, the lease agreements dated April 7, 1992 and December 1, 1992, the certificate of insurance dated February 24, 1992, and Claimant's 1992 tax return, [employer's] report of Claimant's earnings for 1993 and the reports and testimony of Dr. Tarwater and Dr. Laing.

*Sixth:* This [WCJ] finds, based upon the credible testimony of the Claimant, that the Claimant was advised by Gary Teeter and Dean Mitchell that the Claimant would be covered by Workers' Compensation Insurance if the Claimant drove for [employer]. Neither Mr. Teeter or Mr. Mitchell were called to refute the Claimant's testimony.

*Seventh:* This [WCJ] finds that the representations made by Gary Teeter and Dean Mitchell are sufficient to estop [employer] from denying the Employer–Employee relationship although [employer] did not exert any control over the claimant. The Claimant credible [sic] testified that the representation that the Claimant would be covered by Workers' Compensation Insurance was a big factor in his decision to sign on with [employer]. Ms. Parchem, who was Vice President, Risk Manager and Safety Director for [employer], admitted that Gary Teeter and Dean Mitchell were transportation agents who had the authority to make contracts on the behalf of [employer]. Mr. Teeter had signed the initial lease agreement. Since Mr. Mitchell and Mr. Teeter had the authority to bind [employer] regarding the lease agreement, both gentlemen had the apparent authority to make binding representation [sic] regarding factors concerning that relationship. This [WCJ] does not find that fax [sic] sent by [employer] to the agents stating that lease drivers were not covered by Workers' Compensation Insurance negates the representation made by Gary Teeter and Dean Mitchell. [Employer] produced no evidence that the information contained in that fax [sic] was passed onto the lease drivers.

*Eighth:* This [WCJ] finds, based upon the credible testimony of the Claimant and Ms. Parchem, that [employer] did not exercise any control over the Claimant. Although the lease agreement provided for exclusive possession, control and use of the leased equipment, the Claimant ws [sic] free to decide if he would take a load for [employer] and to take loads from other carrier [sic] without requesting permission from [employer]. [Employer] did not provide any directions to the Claimant other than where and when to pickup the load and where to deliver the load. The Claimant selected his own routes and paid all the expenses connected with the trip or the equipment. The Claimant was not required to call [employer] while in route to report his progress. The Claimant received a commission of seventy-five (75) percent of the load. [Employer] did not deduct any taxes or Social Security payments form [sic] the monies paid to the Claimant. In addition, the Claimant only averaged one load per week for [employer] based on Ms. Parchem's credible testimony and the record of income from [employer]. Ms. Parchem credibly testified that drivers, who were considered by [employer] to be employees, were paid thirty (30) percent of the gross, and had taxes deducted from the payroll, could not refuse a load, and had to report on their progress while in route with the loads.

\* \* \* \* \* \*

*Tenth:* This [WCJ] finds, based on the credible testimony of the Claimant and Dr. Tarwater, that the Claimant was totally disabled from October 19, 1993 through and including March 30, 1994 due to neck, back and left knee injury sustained in the truck accident on October 19, 1993 while the Claimant was within the course of his employment with [employer]. Dr. Tarwater noted bruising and mild swelling of the left knee and spasms of the neck and low back and left knee.

*Eleventh:* This [WCJ] finds, based on the credible testimony of the Claimant, that

---

**3.** The actual date of claimant's injury was October 19, 1993.

the Claimant returned to work with another employer on March 31, 1994 without a wage loss.

*Twelfth:* This [WCJ] finds, based on the credible testimony of Dr. Laing, that the Claimant had fully recovered form [sic] the October 19, 1993 work injuries to his left knee, neck and low back as of July 20, 1994. Dr. Laing reported that the Claimant's physical examination and X-rays were normal. The Claimant was working regularly when the Claimant testified on January 4, 1995 and did not testify to any continuing problems on January 4, 1995.

Based on the above facts, the WCJ concluded, *inter alia,* that: (1) employer was estopped from denying that claimant was an employee since its agents had advised claimant that he would be covered by workers' compensation insurance if the claimant drove for employer; (2) claimant met his burden of proof by showing that he was disabled from October 19, 1993 through and including March 30, 1994 as a result of the injuries sustained in the course of claimant's employment with employer; (3) that benefits should be suspended from March 31, 1994 through and including July 19, 1994 since claimant had returned to work without a wage loss; and (4) claimant failed to establish that he continued to suffer from any disability due to the October 19, 1993 injuries as of July 20, 1994. Accordingly, the WCJ granted claimant benefits in accordance with her conclusions.

Employer appealed the WCJ's decision to the board. The board affirmed the WCJ.[4] This appeal followed.

■ Initially, we note that this court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322,

652 A.2d 797 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods v. Workmen's Compensation Appeal Board (Clouser),* 114 Pa.Cmwlth. 382, 539 A.2d 11 (1988). This court may not disturb a WCJ's findings when they are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock),* 667 A.2d 262 (Pa.Cmwlth.1995). Moreover, the WCJ, as the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa.Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991).

■ To prevail in a workers' compensation case, a claimant must show that an employment relationship existed, that the accident or injury occurred in the course of his employment, and that the accident or injury was related to that employment. *Siano by Siano v. Workmen's Compensation Appeal Board (Dileo's Restaurant),* 137 Pa.Cmwlth. 487, 586 A.2d 1008 (1991). Thus a claimant has the burden of proving that an employee relationship existed, and the question of whether the defendant was the employer of the claimant is a question of law based upon the findings of fact. *Nevin Trucking.*

In determining whether an employer/employee relationship existed at the time of the injury, our Supreme Court has set forth the following factors to be considered:

Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment

---

4. On appeal, the board formulated the issue before it as whether employer's agents bound employer to providing workers' compensation coverage when the agents orally informed claimant that he would be provided with said coverage.

However, a review of the board's decision reveals that that the board did not address this issue addressing instead the issue of whether the WCJ properly found, based on the indicia of control, that claimant was an employee.

is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.

*Id.*, 667 A.2d at 266 (citations omitted). However, " '[t]hese indicia are not to be considered circumstantial in nature and whether some or all of them exist in any given situation is not absolutely controlling as to the outcome; each case must be determined on its own facts.' " *North East Express, Inc. v. Workmen's Compensation Appeal Board (Woytas),* 77 Pa.Cmwlth. 255, 465 A.2d 724, 725 (1983) (quoting *J. Miller Co. v. Mixter,* 2 Pa.Cmwlth. 229, 277 A.2d 867, 869 (1971)).

 A crucial element in determining whether a claimant is an employee, rather than an independent contractor, is whether the alleged employer had the right to control the work to be done and the manner in which the work is to be performed. *Tomczak v. Workmen's Compensation Appeal Board (Pro–Aire Transport, Inc.),* 150 Pa.Cmwlth. 431, 615 A.2d 993 (1992). In addition, neither the workers' compensation authorities nor a reviewing court should be solicitous to find contractorship rather than employment. *Nevin Trucking.*

 In the instant action, the WCJ clearly found, based on the credible testimony of claimant and Ms. Parchem, that employer did not exercise any control over claimant. Eighth Finding of Fact. A review of the record reveals that this finding is supported by substantial evidence. *See* Reproduced Record, Testimony of William Hickle at 31a–45a; 63a–71a; Deposition Testimony of Patricia Parchem at 166a–211a.

 Accordingly, claimant was not an employee of employer when he was injured on October 19, 1993. We now turn to the question of whether employer is estopped from asserting an employer/employee relationship based on representations by a third party agent that claimant would be covered by workers' compensation insurance.

Employer argues that it was error for the WCJ to estop employer from asserting that claimant was not an employee because a third party agent represented to claimant prior to claimant entering into the lease

agreement, that claimant would be covered by workers' compensation insurance. We disagree.

This court has previously held that a business was estopped from denying that an employer-employee relationship existed because of its actions in informing the claimant and other companies involved that the claimant was in fact covered under the business' workers' compensation policy. *American Insurance Company v. Workmen's Compensation Appeal Board (Barnhart),* 146 Pa. Cmwlth. 608, 606 A.2d 655 (1992). In *American Insurance Company,* the claimant was a truck driver for Washington Leasing which did business with Aero Trucking. Washington Leasing leased tractor-trailers and brokered its drivers only to Aero Trucking.

In 1984, an employee of Aero Trucking, Robert Cox, formed Truck Services, Inc., a corporation solely in the business of attempting to supply workers' compensation insurance to independent truck drivers. Mr. Cox contacted the president of Aero Trucking, Ed Conto, to tell him that he found workers' compensation coverage for the independent drivers of Aero Trucking. Mr. Conto then sent a letter to all drivers of Aero Trucking, including the claimant, informing them that the workers' compensation insurance coverage they had been requesting could now be available to them through Truck Services.

As a result, new lease and brokerage agreements were entered into which provided that Truck Services would meet all requirements and conditions, including workers' compensation, as an independent contractor and would comply with all rules and regulations of any duly constituted governmental authority with respect to such services. The outcome of this new arrangement was that Washington Leasing would broker all its drivers to Truck Services which would in turn provide them with workers' compensation insurance and broker them to Aero Trucking. Thereafter, workers' compensation insurance policies were secured and renewed on an annual basis.

On July 13, 1987, claimant suffered severe injuries when his tractor-trailer collided

head-on with an oncoming vehicle. The claimant filed for benefits which were denied for two reasons: (1) the claimant was not an employee of Truck Services; and (2) the policy only covered drivers whose home terminal was in Delaware and the claimant's home was in Pennsylvania.

The claimant then filed a claim petition with the Bureau of Workers' Compensation, which was granted by a WCJ. The WCJ found that the claimant was an employee of Aero Trucking which, because of its actions, could not deny the existence of an employer-employee relationship. The WCJ also found that the workers' compensation policy issued to Truck Services covered the claimant due to Truck Service's relationship with Aero Trucking. On appeal, the board affirmed the WCJ's decision.

On appeal to this court, we stated that "Truck Services is estopped from denying that an employer-employee relationship existed because of its actions in telling Claimant and the other companies involved that Claimant was in fact covered under Truck Services' workmen's compensation policy." *American Insurance Company*, 606 A.2d at 658. We stated further that:

> Not only was the coverage being provided and paid for in the name of Truck Services, Truck Services led the Claimant, Aero Trucking and Washington Leasing to believe that Claimant was in fact covered. Claimant testified that he was told by Washington Leasing that he was covered by workmen's compensation (33a–34a). Washington Leasing was told by Truck Services that the drivers were covered by Truck Services' policy. (546a–47a; 556a). Claimant also testified that he was told by Mr. Cox of Truck Services following the accident, that he was entitled to recover. (28a; 32a). Aero Trucking also stated it believed that Claimant was covered by workmen's compensation. (235a–36a). Because Truck Services obtained and paid for a workmen's compensation policy and led the Claimant to believe that the policy covered him, Truck Services cannot now contend that an employer-employee rela-

tionship does not exist between it and the Claimant.

*Id.* 606 A.2d at 659.

In the present case, as in *American Insurance Company*, we believe that employer is estopped from denying that an employer-employee relationship existed because of the actions of its agents. The WCJ found, based on claimant's credible testimony that claimant was advised by Mr. Teeter and Mr. Mitchell that claimant would be covered by workers' compensation insurance if claimant drove for employer and that this representation was a big factor in claimant's decision to drive for employer. Sixth and seventh Findings of Fact. The WCJ further found, based on Ms. Parchem's testimony, that Mr. Teeter and Mr. Mitchell were transportation agents who had the authority to make contracts on behalf of employer and that Mr. Teeter had signed the initial lease agreement. Seventh Finding of Fact. Because Mr. Teeter and Mr. Mitchell had the authority to bind employer regarding the lease agreement, the WCJ found that these gentlemen also had the apparent authority to make binding representations regarding factors concerning that relationship. *Id.* The WCJ rejected employer's evidence to the contrary. *Id.*

As the ultimate fact finder, the WCJ is the adjudicator with the authority to reject or accept a witness' testimony and to weigh the evidence. As the reviewing body, this court is without power to usurp that authority and must affirm the WCJ's findings if they are supported by substantial evidence. Accordingly, we are left with no alternative but to affirm the board's order upholding the WCJ's decision that employer is estopped from denying that claimant was an employee since employer's agents had advised claimant that he would be covered by workers' compensation insurance.

### ORDER

NOW, this 13th day of November, 1997, the order of the Workers' Compensation Appeal Board, dated January 29, 1997, at No. A95–2277, is affirmed.