**Frederick SCHMIDT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (IATSE LOCAL 3), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 17, 2010.

Decided December 15, 2010.

Publication Ordered April 26, 2011.

---

Rhonda A. Rudman, Pittsburgh, for petitioner.

Lawrence R. Chaban, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Frederick Schmidt (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) to grant compensation for a closed period of time and, thereafter, to terminate benefits.[1] Claimant contends that a termination was inappropriate because he will continue to suffer residual pain from the work-related injury. We affirm the Board.

Claimant is employed as a stage hand by IATSE Local 3 (Employer).[2] He received

1. The Board modified the WCJ's decision with respect to the calculation of Claimant's average weekly wage; however, the recalculated weekly wage is not an issue before the Court.

2. "IATSE" stands for International Alliance of Theatrical Stage Employees.

assignments from Employer's office, which is considered a "hiring hall." Reproduced Record at 124a (R.R. ——). On September 11, 2007, he was injured while working at the Mellon Arena in Pittsburgh. Specifically, Claimant was climbing a pole when he slipped and fell to the ground. He fell approximately eight feet, landing on concrete.

On March 21, 2008, Claimant filed a claim petition, alleging a work-related injury to his lower back. He requested partial disability from September 12, 2007, to January 18, 2008, and total disability from January 19, 2008, onward. On July 3, 2008, Claimant returned to work at his pre-injury job, with no loss of wages. Employer then requested a termination of benefits.

On August 27, 2008, the parties reached an agreement that on September 11, 2007, Claimant sustained a work-related injury, described as a L3–L4 disc herniation and lumbar strain. The agreement resolved Claimant's right to compensation through June 30, 2008. However, the parties requested that the WCJ determine whether Employer was entitled to a termination or a suspension of benefits after June 30, 2008.

At the first hearing before the WCJ, Claimant testified that when he fell, he felt pain in his back and his right side. At the emergency room, he was given various tests and then released. He returned to work several days later, but the back pain continued, radiating down his right leg. His family doctor, Vern Orlang, M.D., first prescribed steroids and pain medication and then in January, 2008, referred Claimant to Ashvin Ragoowansi, M.D., who performed surgery on Claimant on February 1, 2008. The surgery consisted of a

> L3–4 decompressive laminectomy, right-sided microdiscectomy, fusion utilizing autologous laminectomy bone and sym-

phony augmented bone bank bone, pedicle screw fixation at L3 and L4 bilaterally utilizing the Expedium DePuy spine instrumentation system.

R.R. 128a. Claimant testified that his condition improved with the surgery by resolving his limp and leg pain. However, he continued to suffer back pain on occasion, which appeared to be aggravated by changes in the weather. Claimant addressed this back pain with Ibuprofen. On Dr. Ragoowansi's referral, Claimant underwent physical therapy from John Dunne, D.O., who released Claimant to return to work on July 3, 2008.

At a second hearing before the WCJ, Claimant testified that he had returned to work with Employer. However, working caused Claimant to suffer daily back pain and occasional right leg pain, which he treats with Ibuprofen. Claimant testified that he had not missed work because of pain and has not sought medical treatment for the pain.

Claimant submitted copies of his medical records. They showed that Claimant had not been seen by Dr. Orlang since January 2008; that Dr. Ragoowansi diagnosed Claimant with a L3–L4 pars defect and disc herniation; and that Claimant's leg pain had resolved. On August 19, 2008, Dr. Ragoowansi reported that Claimant's incision had healed with "some obvious paraspinal muscles spasm, although it is nontender." R.R. 75a. Dr. Dunne's records showed that he released Claimant to light duty work on May 28, 2008, and to his pre-injury job on July 2, 2008. He reported Claimant to suffer soreness and stiffness in the morning, which Dr. Dunne did not consider unusual. Dr. Dunne reported that Claimant should avoid heavy physical labor and should brace well before lifting.

Employer presented the deposition testimony of Richard Kasdan, M.D., a neurologist. He conducted an independent medical examination (IME) of Claimant on June 30, 2008. He found Claimant to be well conditioned, with normal range of motion in his legs and back. Claimant had a slight degree of atrophy in his right thigh, which Dr. Kasdan concluded would improve with time.

Dr. Kasdan opined that Claimant had sustained a lumbar strain with disc herniation at the L3–L4 level, which was completely resolved by the surgery. Accordingly, Claimant's work-related disability had ceased by the date of the IME. Dr. Kasdan stated that diagnostic testing revealed "findings of the pars defect, degeneration, [and] spondylolisthesis" that preceded Claimant's work injury. R.R. 110a–111a. Dr. Kasdan also found that Claimant's pre-existing conditions were not aggravated by the work injury, with the possible exception of the pars defect, i.e., a congenital crack in the spine at the L3 level. The pars defect caused the bone at the L4 level to slip behind the spine. Dr. Kasdan explained that a herniated disc does not usually require a fusion, but it was necessary in Claimant's case because of the congenital crack. Dr. Kasdan opined that the aggravation of Claimant's congenital crack caused by his work injury, if any, was resolved by the fusion. Therefore, Claimant's work-related disability was over, and he could return to work with no restrictions.

Dr. Kasdan was asked whether Claimant's testimony regarding his ongoing back pain would cause him to change his opinion that Claimant was fully recovered. Dr. Kasdan replied "[t]hat isn't what he told me, but that would not." R.R. 113a. Dr. Kasdan noted that he would advise Claimant to stretch his back on a regular basis, which he would recommend to anyone who had undergone Claimant's type of surgery.

On cross-examination, Dr. Kasdan was again asked about Claimant's complaints of pain. He replied, "[i]n the first couple months after [surgery], there might be some residual back pain. And he may even have some back pain with change in the weather down the road, but that doesn't mean that he hasn't recovered and can do his job." R.R. 114a. He further stated, "[o]n the day that I saw him, he really to me demonstrated no evidence of new problem related to old problem and/or except for some subjective complaints of stinging in his back now and then." R.R. 115a. Dr. Kasdan was then questioned as to whether it would be unusual for Claimant to be taking Ibuprofen and whether Employer should be required to pay for it. He replied, "[i]f [Claimant] never took Ibuprofen before and if he's taking the Ibuprofen only for residual back pain in his back, I cannot say that it isn't the employer's responsibility to take care of that." R.R. 116a. Dr. Kasdan explained:

> I'm trying to say to you that based upon the time that has elapsed, the findings that are there, what happened to him, what his job responsibilities are and what my exam shows, I don't think anybody that has a back problem is ever without any subjective complaint that might require an Ibuprofen or a hot shower some day. But from a functional capacity, I think he's recovered.
>
> Now, does that mean if he needs Ibuprofen the next day, is that the employer's responsibility? Yes, it is. If he goes six months from now and comes in with back and leg pain and it's due to a herniated disc at another level, I don't think that's the employer's responsibility.

R.R. 117a.

The WCJ accepted the testimony of Dr. Kasdan as credible and persuasive. He

rejected the testimony of Claimant to the extent that it contradicted Dr. Kasdan. To the extent the medical records of Claimant's doctors contradicted Dr. Kasdan's testimony, the medical records were rejected. Accordingly, the WCJ terminated Claimant's benefits as of the date of Dr. Kasdan's IME. Notably, the WCJ found Dr. Kasdan's statements regarding Claimant's use of Ibuprofen irrelevant, noting that Dr. Kasdan did not recommend its use.

Claimant appealed to the Board, arguing that Employer's evidence did not support a termination and that the WCJ erred in calculating the pre-injury average weekly wage. The Board affirmed the WCJ's decision to terminate, but it modified and reversed as to the calculation of the average weekly wage.[3]

In regard to the termination of Claimant's compensation, the Board noted that Dr. Kasdan had testified that Claimant had fully recovered. Although Dr. Kasdan acknowledged that Claimant reported subjective complaints of pain, Dr. Kasdan did not report objective evidence to support Claimant's complaints. The Board relied upon *Laird v. Workmen's Compensation Appeal Board (Michael Curran & Associates)*, 137 Pa.Cmwlth. 206, 585 A.2d 602 (1991), wherein this Court held that benefits can be terminated even where the medical expert credited by the WCJ has testified that the claimant might experience symptoms in the future.

■■■■ On appeal to this Court, Claimant raises one issue for our review.[4] He argues that the opinion of Dr. Kasdan

cannot support a termination of benefits because Dr. Kasdan testified that Claimant continues to suffer residual symptoms that will need future treatment. As such, Claimant argues that Dr. Kasdan's testimony cannot support a termination under the standards established in *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 705 A.2d 1290 (1997). Employer disagrees with Claimant's characterization of Dr. Kasdan's testimony. It also counters that *Laird* supports the finding that Dr. Kasdan's testimony was sufficient to warrant a termination of benefits.

We begin with a review of *Udvari*, which concerned the circumstances under which a claimant's benefits may be terminated while the claimant continues to experience pain. Our Supreme Court noted that there is a difference between an "employer's medical expert accepting the fact that the claimant suffered from pain" and "the medical expert's mere recognition that the claimant *complained* of pain." *Id.* at 326, 705 A.2d at 1293. It explained as follows:

> The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ. In the absence of objective medical testimony, the WCJ is neither required to accept the claimant's assertions, nor prohibited from doing so. *Testimony by the employer's medical expert as to the existence of the claimant's complaints of pain does not require the WCJ to find for the claimant.* A contrary conclusion would lead to the absurd result that a claimant could forever preclude the termination of benefits

---

3. Claimant's average weekly wage was increased from $893.26 to $1,002.19. This resulted in an increase in his benefits from $595.50 per week to $668.12 per week.

4. Our scope of review is limited to determining whether there has been a violation of

constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence of record. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558, 561 (Pa. Cmwlth.1997).

by merely complaining of continuing pain. *What is relevant in deciding whether the termination of benefits is warranted is whether the claimant suffers from pain as a result of the work-related injury.*

*Id.* at 327, 705 A.2d at 1293 (footnote omitted) (emphasis added). The Supreme Court concluded that a termination is appropriate where the employer's medical expert unequivocally testifies

that the claimant is fully recovered, can return to work without restriction and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury.

*Id.* (footnote omitted). The Supreme Court emphasized that it did not intend to impose a "magic words" requirement upon the phrasing of a medical expert's opinion. Rather, an expert's testimony must be reviewed in its entirety to determine whether it supported a termination. *Id.* at 327 n. 3, 705 A.2d at 1293 n. 3.

In *Udvari,* the employer's medical expert testified that the claimant suffered symptom magnification syndrome, a term used to describe the exaggeration of symptoms by a patient, not a discrete illness. The expert stated that "she might believe that she has this pain. I'm going to give her the benefit of the doubt in that regard." *Id.* at 330, 705 A.2d at 1295 (emphasis omitted). The Supreme Court determined that this statement did not establish that the claimant continued to experience pain, particularly where the employer's expert testified repeatedly that there was no objective basis for her claims. Accordingly, the claimant's benefits were terminated.

In *Laird,* the WCJ granted a termination, and the claimant appealed. The employer's expert had testified that the claimant still felt pain; should not lift over twenty-five pounds; and might need symptomatic care in the future. The claimant argued that this testimony established that he had not fully recovered. This Court disagreed. It noted that although the medical expert had stated that the claimant felt pain, he also stated that the pain could not be substantiated by objective evidence. The medical expert's comments were intended to note only that, typically, a claimant begins his return to work with a light duty assignment. Finally, although the expert had stated that the claimant might need symptomatic care, he also testified that such care would not restrict the claimant's ability to work. In sum, this Court determined that given the medical expert's testimony in its entirety, the comments on which the claimant relied did not undermine the expert's opinion that the claimant could return to work.

Claimant argues that *Udvari* requires (1) medical testimony that the claimant is fully recovered; (2) medical testimony that the claimant can return to work without restrictions; and (3) medical testimony that there are no objective medical findings to substantiate the claim of pain. Claimant concedes that Employer met the first two prongs, but he claims that Dr. Kasdan failed to meet the third prong because he did not state that Claimant's pain was not supported by objective evidence. Indeed, Dr. Kasdan stated that Claimant could have continued pain with change of weather; could not say Claimant would never again experience back pain; recommended that Claimant do back stretching exercises; and admitted that Employer could be responsible for paying for Claimant's Ibuprofen regimen.

Employer counters that Dr. Kasdan fully satisfied the *Udvari* standards. Dr. Kasdan testified that Claimant was fully recovered and could return to work without restrictions and that Claimant's work-

related disability had ceased. Dr. Kasdan did not testify that Claimant needed more medical treatment; rather, he recommended only that Claimant, like anyone who has had back surgery, should do stretching exercises. He did not recommend that Claimant take Ibuprofen. He merely stated that if Claimant takes Ibuprofen for residual back pain, he could not say whether Employer should or should not be responsible for the cost.

Dr. Kasdan detailed his physical examination of Claimant, finding specifically that Claimant could bend forward and backward and could lift each leg to a normal degree. Dr. Kasdan found a slight atrophy in the right thigh, which would eventually resolve, and a problem with the right knee reflex. Dr. Kasdan opined that neither was disabling because the atrophy was minimal and the reflex was not essential to function. He concluded that Claimant "had no other abnormalities on his neurologic exam." R.R. 109a.

Dr. Kasdan testified that Claimant had pars defect, degeneration, and spondylolisthesis, which defects pre-dated Claimant's work-related injury. The pars defect, a congenital crack in the spine, may have been aggravated by the work-related injury. R.R. 111a. However, Dr. Kasdan opined that any aggravation of Claimant's pre-existing conditions was resolved by the surgery.

▮ Under *Udvari*, Dr. Kasdan was not obligated to opine that there was no objective evidence to support Claimant's complaints of pain. There are no "magic words" for a medical expert's testimony. Rather, we are to consider the expert's testimony in its entirety to determine whether a termination was warranted. Dr. Kasdan testified that Claimant's work-related disability was resolved and the aggravation to his pre-existing condition was also resolved. Viewed in its entirety, Dr.

Kasdan's testimony is sufficient to meet the third prong, *i.e.*, sufficient to support a finding that there was no objective evidence to support Claimant's subjective complaints of pain.

▮ Dr. Kasdan stated that Claimant may "have some back pain with change in the weather" from time to time. These comments do not support an inference that Dr. Kasdan found objective medical findings for Claimant's pain. Likewise, Dr. Kasdan's recommendation for back strengthening stretching exercises is irrelevant; as Dr. Kasdan explained, he makes this recommendation to anyone who has undergone back surgery.

Finally, Claimant argues that Dr. Kasdan's statement that Employer could be responsible to pay for Ibuprofen establishes an ongoing disability. We disagree. First, neither Dr. Kasdan nor any physician prescribed Ibuprofen; no physician testified that it was a necessary treatment. Dr. Kasdan merely noted that, generally, anyone who has had a back problem may need a hot shower or an Ibuprofen "some day." R.R. 117a. Second, Dr. Kasdan stated that "[i]f [Claimant] never took Ibuprofen before and if he's taking the Ibuprofen only for residual back pain ... I cannot say that it isn't the employer's responsibility to take care of that." R.R. 116a. The WCJ found these statements irrelevant. We agree.

Dr. Kasdan's testimony about the Ibuprofen does not establish that Claimant has an ongoing disability. Dr. Kasdan stated that "if," hypothetically, Claimant did not take Ibuprofen prior to his work-related injury and "if," hypothetically, Claimant was taking Ibuprofen for residual back pain, then it might be Employer's responsibility to pay for it. Dr. Kasdan is a medical expert, not a legal expert. This testimony was irrelevant to the question of

whether Claimant required ongoing treatment for his work-related injury.

For the above-stated reasons, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 15th day of December, 2010, the order of the Workers' Compensation Appeal Board dated May 25, 2010, in the above-captioned matter is hereby AFFIRMED.