**Mary BOND, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BELMONT CENTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 1998.

Decided April 20, 1998.

---

Brian R. Steiner, Philadelphia, for petitioner.

David J. Brown, Philadelphia, for respondent.

Before McGINLEY and LEADBETTER, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Mary Bond (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed the order of a workers' compensation judge (WCJ) and dismissed Claimant's claim petition on the grounds that the petition was time barred. We affirm.

On October 26, 1992, Claimant filed a claim petition alleging that she was injured in the course and scope of her employment with Belmont Center for Comprehensive Treatment (Employer) on March 25, 1989, while assisting other staff during a psychiatric emergency. Claimant was employed as a patient care coordinator,[1] and assisted in quelling the psychiatric emergency involving thirty-two adolescent patients who were fighting with staff, jumping over furniture and throwing trashcans. During the melee, Claimant was kicked, punched, scratched, spit at and knocked down. Claimant also alleged that she was struck on the neck on the right side and that a lump developed. Employer denied liability.

During the litigation that followed, Claimant's petition was amended to include "a injury of neck (disc) dysfunction, carpal tunnel syndrome and injury to her parathyroid gland." (WCJ's Finding of Fact No. 3). Employer amended its answer to include a statute of limitations defense. A further amendment to the claim petition alleged disability dates from September 8, 1992 to November 2, 1992 and from January 18, 1993 into the indefinite future.

The WCJ found as fact the following. On March 25, 1989, the day of the psychiatric emergency, Claimant reported her injuries to her supervisor and although she was in pain she reported to work the following day and saw the hospital physician. Claimant continued to work but suffered nausea, pain in her neck, her back, arms and hands. She also experienced vomiting and disorientation.

Not until September 9, 1992, when she became disoriented while driving and was admitted to the hospital, was Claimant diagnosed with hypercalcemia, which is a hyperparathyroid condition caused by a parathyroid adenoma.[2] Claimant underwent surgery to remove the parathyroid adenoma in her neck and was discharged from the hospital on September 20, 1992. Claimant returned to work on November 2, 1992, as a nursing education instructor, primarily fulfilling duties as a teacher and doing research and writing. Claimant continued working in this capacity until January 18, 1993, at which time she found she could not continue her duties due to severe pain in her fingers.

Claimant provided a note from Michael I. Cheikin, M.D., one of her treating physicians,

---

1. A patient care coordinator is a nursing supervisor and hospital administrator, whose duties involve patients, visitors and staff.

2. A parathyroid adenoma is a tumor of the parathyroid gland.

to the nursing supervisor, the assistant director of nursing and the personnel director, informing them that she needed time off because of the problems with her hand and neck. Claimant's supervisor had Claimant amend the original 1989 incident report, stating that Claimant was losing time from work due to her injuries.

Claimant continued experiencing pain in her hands and shoulders and was unable to return to her job as a nursing education instructor. A letter dated April 30, 1993 from Employer offered a position to Claimant as a staff development instructor. Claimant responded that this job entailed the same writing and research duties of her prior teaching job and that her symptoms and pain continued to preclude her from accepting the new position. By letter dated October 6, 1993, Employer informed Claimant of her termination.[3]

In addition to the findings of fact based on Claimant's credible testimony summarized above, the WCJ made findings of fact with regard to the medical evidence presented by both Claimant and Employer. Claimant presented the deposition testimony of Dr. Cheikin, who began treating Claimant on January 18, 1993, and James Lewis, M.D., who first treated Claimant on April 13, 1989. Employer presented the deposition testimony of Stanley Askin, M.D., and David M. Finkel, M.D. Both of these doctors performed independent medical examinations in March of 1994.

With regard to the medical testimony, the WCJ found Dr. Lewis credible and accepted his testimony that Claimant's carpal tunnel syndrome was the direct result of her March 25, 1989 work injury. The WCJ also found Dr. Cheikin credible and accepted his testimony that Claimant suffered from cervical radiculopathy, thoracic outlet syndrome, upper trunk dysfunction, carpal tunnel syndrome, peripheral polyneuropathy, major depression, and chronic pain syndrome, all of which were caused by Claimant injury at work on March 25, 1989. The WCJ accepted as credible the testimony of Dr. Askin and Dr. Finkel to the extent their testimony corroborated that of Claimant's doctors, specifically rejecting Dr. Askin's testimony concerning the lack of causation between Claimant's carpal tunnel syndrome and neck syndrome to Claimant's work injury. The WCJ did, however, reject the testimony Drs. Lewis and Cheikin concerning Claimant's hyperparathyroid condition and adenoma, believing instead Dr. Finkel's testimony on the lack of a connection between Claimant's adenoma and hyperthyroid condition and her work injury.

The WCJ granted Claimant's petition, concluding that Claimant had proven that she sustained a work-related injury on March 25, 1989 and again on January 18, 1993, and that she was disabled from her employment from January 18, 1993 into the indefinite future. The WCJ further concluded that:

3. Claimant has sustained her burden of proving that her Claim Petition for Compensation was timely filed as she was not disabled from her employment due to her work injury until January 18, 1993 and said injury was also in the form of an aggravation of her condition and thus, her Claim Petition was timely filed.

. . . .

10. Employer is entitled to a credit against the workers' compensation awarded to Claimant in the amount of $14,843.54 [amount of disability paid to Claimant].

(WCJ's decision, pp. 9–10).

Both parties appealed to the Board. Claimant argued that the WCJ erred in giving Employer credit for disability benefits paid. Employer argued that the WCJ improperly applied the statute of limitations defense and erred in finding an aggravation and an injury date of January 18, 1993, because the record lacked evidence to support this finding.

Quoting Section 315 of the Workers' Compensation Act (Act),[4] and relying on *Brooks*

---

3. During the period from January 18, 1993 until *approximately* October 6, 1993, Claimant received $14,843.54 in long term disability benefits.

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 602, which states:

   In cases of personal injury all claims for compensation shall be forever barred, unless, with-

v. *Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Cmwlth. 248, 624 A.2d 821 (1993), *petition for allowance of appeal denied*, 536 Pa. 631, 637 A.2d 291 (1993), and *McDevitt v. Workmen's Compensation Appeal Board (Ron Davison Chevrolet)*, 106 Pa.Cmwlth. 207, 525 A.2d 1252 (1987), *petition for allowance of appeal dismissed as having been improvidently granted*, 520 Pa. 119, 552 A.2d 1048 (1989), the Board recited the general rule that the date of injury commences the running of the three-year statute of limitation, not the date of a claimant's disability. However, the Board noted an exception to the rule where a claimant sustains a cumulative trauma disorder, which results in a daily aggravation of the condition. In these cases, the last date of employment is the date of injury, *ITT–Hartford Insurance Group v. Workmen's Compensation Appeal Board (Atlantic Mutual Insurance Co.)*, 688 A.2d 247 (Pa. Cmwlth.1997), but medical evidence is required to establish the aggravation of the condition. *McDevitt.*

Relying on the above stated law, the Board reviewed the testimony of Claimant's medical witnesses and concluded that although both doctors testified that Claimant's carpal tunnel syndrome and other conditions were directly related to Claimant's March, 1989 injury, the doctors did not testify that Claimant's disability resulted from a continuous work-related aggravation or from cumulative trauma. Thus, the Board determined that the time period in which Claimant could file a claim began to run on March 25, 1989, and because Claimant did not file her claim petition until October 26, 1992, it was time barred. The Board also held that no evidence in the record supported the WCJ's finding that an aggravation or an injury occurred on January 18, 1993.[5]

On appeal to this Court,[6] Claimant argues that her own as well as Dr. Cheikin's testimony supports the WCJ's finding that her continued working caused an aggravation of her condition. Claimant further contends that because the last day of work is the date of injury in a repetitive trauma cases, her petition should be considered timely.

The situation here is complicated by the fact that although Claimant's documented injury occurred on March 25, 1989, she also suffered from carpal tunnel syndrome, which is insidious in origin and is progressive much like an occupational disease. *Williamette Industries v. Workmen's Compensation Appeal Board (Lockett)*, 167 Pa.Cmwlth. 164, 647 A.2d 665 (1994). Although carpal tunnel syndrome is normally associated with cumulative trauma situations, in the case before us Dr. Cheikin testified that it was the result of the single incident occurring on March 25, 1989 and that Claimant had no other risk factor for carpal tunnel. (Dr. Cheikin's deposition, p. 68). Recognizing that the WCJ made no specific findings relating to Claimant's development of carpal tunnel syndrome, we closely examined Dr. Cheikin's testimony. He stated in simplified terms that after Claimant was injured in March of 1989, she suffered from chronic muscle tightness and, coupled with a lack of range of motion in the arms, Claimant developed carpal tunnel syndrome. (Dr. Cheikin's deposition, pp. 107–110).

All of the cases cited by Claimant, including *Williamette*, are distinguishable from the situation before us in that medical evidence established an aggravation type of injury or that cumulative trauma was present. *See USAir, Inc. v. Workmen's Compensation Appeal Board (Schwarz)*, 160 Pa.Cmwlth. 100, 634 A.2d 714 (1993), *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Cmwlth. 641, 625 A.2d 1308

in three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

5. Because the Board reversed the WCJ's grant of benefits to Claimant, it did not reach the issue concerning the granting of a credit to Employer for long term disability benefits paid to Claimant.

6. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

(1993), and *Pollard v. Workmen's Compensation Appeal Board (North Strabane Township)*, 131 Pa.Cmwlth. 339, 570 A.2d 143 (1990), *petitions for allowance of appeal denied*, 525 Pa. 665, 583 A.2d 794, 795 (1990).

In *Williamette*, the court affirmed a grant of benefits to the claimant based upon a determination that the last day of work was the date of injury. The *Williamette* decision turned on a conclusion that evidence in the record did not support a finding that a single incident occurred that could be identified as the date of injury. Therefore, because of the nature of carpal tunnel syndrome, the unrefuted testimony that the claimant suffered from the syndrome and the inability to identify a date of injury, the court affirmed the Board's determination that the injury date was the last date of employment.

■ Here, we have a well-documented injury date. We have Claimant's two treating physicians, found credible by the WCJ, who testified that Claimant's disability relates back to the specific injury that occurred on March 25, 1989. Moreover, neither doctor makes reference to any repetitive type work that Claimant performed that could be construed as continuous trauma and Claimant, although testifying about problems she had with writing, did not contend that the work was repetitive in any way.[7] Therefore, as in *McDevitt*, relied upon by the Board, no medical or other evidence is present to support the contention that each day that Claimant worked after March 25, 1989, was an aggravation of her condition. Nor is there any evidence of record that an aggravation constituting a new injury or a new injury occurred on January 18, 1993. Thus, we conclude that the Board, recognizing that no evidence supported any finding of continuous trauma or an aggravation of the March 25th injury, correctly reversed the WCJ's decision holding that Claimant's claim petition was timely filed.

■ Next, Claimant argues that the three-year statute of limitations should be extended or tolled because Employer lulled Claimant into a false sense of security by paying long term disability benefits. Employer counters that Claimant waived this issue because she failed to raise it before the WCJ, the Board or in her petition for review to this Court. We note that Claimant's appeal to the Board only cites the WCJ's conclusion of law number 10, which concerns Employer's entitlement to credit against the worker's compensation award for payment of long term disability benefits. Claimant's petition for review to this Court references only errors by the Board concerning the timeliness issue. Having failed to raise this issue below, Claimant is now prohibited from raising it for the first time in her brief to this Court. *Coombs v. Workmen's Compensation Appeal Board (Philadelphia Electric Co.)*, 689 A.2d 996 (Pa.Cmwlth.1997) (issue waived if not raised before the Board); *McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth.1997) (issue not raised in petition for review is waived and will not be addressed by this Court).

For the reasons stated above, we hold that the Board did not err in reversing the WCJ's decision. Accordingly, we affirm.

### ORDER

NOW, April 20, 1998, the order of the Workers' Compensation Appeal Board, at No. A96–0314, dated September 30, 1997, is affirmed.

---

7. Although Dr. Cheikin testified that repetitive activities could exacerbate Claimant's condition, he stated that "[t]here was no history of excessive wrist use at home or work." (Dr. Cheikin's deposition, p. 33.)