**INDIAN CREEK SUPPLY and The State Workers' Insurance Fund, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ANDERSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1999.

Decided April 15, 1999.

Rehearing and Reconsideration Denied June 3, 1999.

Amy J. Andrews, Pittsburgh, for petitioners.

Alexander J. Pentecost, Pittsburgh, for respondent.

Before FRIEDMAN, J., LEADBETTER, J., and LORD, Senior Judge.

FRIEDMAN, Judge.

Indian Creek Supply and its workers' compensation insurance carrier, State Workers' Insurance Fund, (together, Employer) appeal from an order of the Workers' Compensation Appeal Board (WCAB) reversing the decision of the workers' compensation judge (WCJ) to grant Employer's petition for termination of Gary Anderson's (Claimant) workers' compensation benefits.

On August 13, 1994, Claimant sustained a work-related back injury while working as a truck driver for Employer. On August 23, 1994, Claimant's work-related injury forced him to leave his employment. Pursuant to a notice of compensation payable describing Claimant's injury as a lumbosacral strain, Claimant received total disability benefits. (WCJ's Findings of Fact, Nos. 1, 4.)

On November 27, 1995, Employer filed a petition to terminate Claimant's benefits, alleging that Claimant could return to work without restrictions as of October 2, 1995. Claimant filed an answer denying the allegations in Employer's petition, and hearings were held before the WCJ. (WCJ's Findings of Fact, No. 2.)

In support of its petition to terminate benefits, Employer offered the deposition testimony of Jack D. Smith, M.D., a Board-certified orthopedic surgeon. Dr. Smith testified that he saw Claimant on October 2, 1995 and, before conducting a physical examination of Claimant, he obtained a history from Claimant regarding the August 13, 1994 work injury. According to Dr. Smith, Claimant did not indicate that a specific incident occurred on August 13, 1994, but, instead, Claimant told Dr. Smith that, on that date, Claimant felt pain in his lower back after driving a truck with a broken seat and performing his usual duties of lifting chutes. Dr. Smith testified that at the time of the evaluation, Claimant complained of nausea, pain in his colon and stomach, frequency of urination, an inflammation feeling in his back and pain that radiated into both of his legs. (WCJ's Findings of Fact, No. 5.)

Dr. Smith testified that his physical examination of Claimant revealed a normal neurologic exam, normal mechanics of movement and a negative straight leg raising test bilaterally. Dr. Smith stated that he could not find any spasm of Claimant's low back area and that the examination revealed no objective findings. (WCJ's Findings of Fact, No. 5.)

Dr. Smith testified that, in addition to examining Claimant, he reviewed several of Claimant's diagnostic reports. Dr. Smith indicated that he reviewed two electrodiagnostic (EMG) studies of Claimant and concluded that one EMG study was normal and the other EMG study suggested the possibility of a peripheral neuropathy; according to Dr. Smith, a neuropathy is a deterioration in the nerve which does not come about as a result of a traumatic injury. Dr. Smith also reviewed Claimant's lumbar MRI report, which indicated a slight midline posterior herniation at the L5–S1 level. Dr. Smith further testified that a follow-up CT scan and myleogram showed disc degeneration at multiple lev-

els but showed no herniation. Dr. Smith explained that CT scans and myleograms are considerably more diagnostic than MRI studies, and he opined that a CT scan/myleogram is the most sensitive imaging study used in the medical community to demonstrate a disc herniation. (WCJ's Findings of Fact, No. 5.)

Dr. Smith further testified that, subsequent to his October 1995 examination of Claimant, he reviewed a discogram and post-discogram CT report of Claimant's back which were performed on February 9, 1996. Dr. Smith indicated that these reports showed a degenerative L5–S1 disc with some loss of height of the disc space due to the degeneration; the tests also suggested a central disc herniation at the L5–S1 level. However, Dr. Smith testified that to properly diagnose a disc herniation following a discogram and post-discogram CT, clinical correlation is necessary, and he opined that his examination of Claimant revealed no objective evidence to suggest the presence of a disc herniation. (WCJ's Findings of Fact, No. 5.)

Finally, Dr. Smith testified that, as of the date of the October 2, 1995 examination, Claimant had fully recovered from the August 13, 1994 work-related injury and that Claimant showed no evidence to suggest that he incurred a disc herniation as a result of that work injury. Dr. Smith concluded that Claimant had sustained a lumbosacral strain on August 13, 1994, but Dr. Smith could not quantify any residuals of the lumbosacral strain or a disc herniation at the time of the examination. (WCJ's Findings of Fact, No. 5.)

In opposition to Employer's termination petition, Claimant testified on his own behalf[1] and presented the deposition testimony of Parvis Baghai, M.D., Board-certified in neurosurgery, who first examined Claimant on January 8, 1996. Dr. Baghai testified that his physical examination of Claimant revealed positive straight leg raising on the left at seventy degrees and a normal neurological exam. Dr. Baghai stated that he reviewed several reports from diagnostic studies performed on Claimant, including a 1995 MRI scan of Claimant's lumbar spine which showed disc space narrowing and a bulge at the L5–S1 level. On cross-examination, however, Dr. Baghai testified that the MRI scan did not show a disc herniation. With respect to other tests, Dr. Baghai indicated that a February 1995 EMG study did not evidence a lumbar radiculopathy or nerve entrapment, a May 1995 lumbar myleogram did not evidence a disc herniation or other abnormality and a May 1995 CT scan did not evidence a disc herniation. Dr. Baghai testified that he recommended that Claimant undergo a discogram, which was performed on February 9, 1996. Dr. Baghai indicated that the results of the discogram revealed a prominent central herniated disc at the L5–S1 level. (WCJ's Findings of Fact, Nos. 7–8.)

Dr. Baghai further testified that he diagnosed Claimant as suffering from a herniated disc at the L5–S1 level. Dr. Baghai indicated that his diagnosis was based on Claimant's post-discogram CT scan and the clinical picture of the type of pain Claimant experiences. Dr. Baghai related Claimant's condition to the August 13, 1994 work-related injury. On cross-examination, Dr. Baghai agreed that it is possible that Claimant suffered the disc herniation subsequent to August 1994 and pointed out that he never saw Claimant before January 8, 1996. Finally, Dr. Baghai opined that Claimant was not capable of returning to his pre-injury job but was

1. Claimant testified, in part, that: he suffered a work-related injury on August 13, 1994 when he experienced gradual pain and spasm in his low back; after his work injury, he began treatment with several doctors and a chiropractor; he continues to have severe pain in his back, with periods of remission followed by a return of severe pain; he has leg pain, testicular pain and tenderness and frequent urination; he does not feel capable of returning to work because he cannot sit or stand for long periods of time. (WCJ's Findings of Fact, No. 4.)

capable of performing light duty work. (WCJ's Findings of Fact, Nos. 7–8.)

After reviewing the evidence, the WCJ accepted the testimony of Dr. Smith as more credible than that of Dr. Baghai.[2] (WCJ's Findings of Fact, No. 9.) Based on Dr. Smith's credible testimony, the WCJ found that there was no objective evidence to correlate a disc herniation to Claimant's August 13, 1994 work-related injury, (WCJ's Findings of Fact, No. 9), and concluded that Employer satisfied its burden of proving that Claimant fully recovered from his low back injury as of October 2, 1995. (WCJ's Conclusions of Law, No. 2.) Accordingly, the WCJ granted Employer's petition for termination of benefits. Claimant appealed to the WCAB, which reversed the order of the WCJ, concluding that Employer failed to satisfy its burden of proving entitlement to termination of benefits because (1) Dr. Smith did not unequivocally opine that Claimant fully and completely recovered from the August 13, 1994 work-related injury, and (2) Dr. Smith's testimony is inconsistent. Employer now appeals to this court.[3]

An employer petitioning for a termination of benefits must prove that a claimant's disability has ceased or that any remaining disability is no longer the result of a work-related injury. *McFaddin v. Workmen's Compensation Appeal Board (Monongahela Valley Hospital)*, 153 Pa. Cmwlth. 252, 620 A.2d 709 (1993). An employer can meet the burden of proving that a claimant's disability has ceased by presenting unequivocal medical evidence of a claimant's full recovery from a work-related injury or that an existing disability is not work-related.[4] *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth. 253, 595 A.2d 697 (1991). In determining whether medical testimony is unequivocal, the medical witness's entire testimony must be reviewed and taken as a whole and a final decision should not rest upon a few words taken out of the context of the entire testimony. *Lewis v. Workmen's Compensation Appeal Board*, 508 Pa. 360, 498 A.2d 800 (1985).

Here, Employer first takes issue with the WCAB's determination that Dr. Smith did not provide an unequivocal opinion that Claimant fully recovered from his August 13, 1994 work-related lumbosacral strain. Employer asserts that Dr. Smith's opinion on that matter was, in fact, unequivocal. We agree with Employer.

The WCAB recognized that it was not necessary for Dr. Smith to use "magic words" to express an unequivocal opinion, *see Williams v. Workmen's Compensation Appeal Board (Montgomery Ward)*, 127 Pa.Cmwlth. 587, 562 A.2d 437 (1989);

---

2. In making his credibility determination, the WCJ stated:

> I find...the evidence submitted by [Dr. Smith] to be more competent and credible than the testimony of Dr. Baghai. Dr. Smith reviewed all of the medical records of all of [Claimant's] treating physicians, together with past diagnostic studies and also performed a physical examination. This records review and physical examination did not reveal any objective evidence to correlate a diagnosis of a disc herniation. The medical records review of prior medical records did not contain any findings consistent with a disc herniation.

(WCJ's Findings of Fact, No. 9.) We note, however, that the WCJ's finding that Claimant's diagnostic records did not reveal any objective evidence to correlate a diagnosis of a disc herniation is not supported by substantial evidence because the discogram and post-discogram reports do, in fact, reveal a central herniated disc at the L5–S1 level.

3. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558 (Pa. Cmwlth.1997).

4. The determination of whether testimony is equivocal is a question of law, subject to review by this court. *Cyclops Corporation/Sawhill Tubular Division v. Workmen's Compensation Appeal Board (Paulsen)*, 158 Pa. Cmwlth. 595, 632 A.2d 617 (1993), *appeal denied*, 538 Pa. 617, 645 A.2d 1320 (1994).

nonetheless, the WCAB concluded that the following testimony by Dr. Smith was insufficient to demonstrate that Claimant fully recovered from his work-related injury:

> Q: Doctor, what is your opinion, within a reasonable degree of medical certainty, that as of the date of your examination of October 2, 1995, whether or not [Claimant] had fully recovered from his work injury of August 13, 1994.
>
> A: At the time that I saw him, given the information that I had and my examination, I did not have any evidence to suggest that he had incurred a disc herniation as a result of his work-related injury. Historically, at least, it appeared he might have sustained a lumbosacral strain of some type, but I could not quantify any residuals of that at that time or of a herniation.

(R.R. at 51a.)

■ Certainly, this testimony demonstrates Dr. Smith's belief that Claimant fully recovered from the lumbosacral strain and had no remaining effects from that work-related injury as of October 2, 1995. Further, we note that Dr. Smith did not impose any restrictions on Claimant's ability to return to work. Moreover, in addition to the above testimony, Employer offered, without objection, Dr. Smith's affidavit of recovery, dated October 2, 1995, which states, "[t]his is to certify that [Claimant] has fully recovered from the lumbosacral strain, which occurred at work on 8/13/94, as of...10/2/95."[5] (R.R. at 52a, 75a.) After considering Dr. Smith's testimony, in conjunction with his affidavit of recovery, we conclude that it constitutes an unequivocal medical opinion and, thus, provided competent, credible and substantial evidence to support the WCJ's determination that Claimant fully recovered from the August 13, 1994 work-related

lumbosacral strain, and the WCAB erred in concluding otherwise.

Ordinarily, like the WCJ, we might conclude here that Employer satisfied its burden of proving entitlement to a termination of Claimant's benefits. However, this case presents unique facts requiring us to continue our inquiry. What sets this case apart is that we are not dealing only with Claimant's lumbosacral strain; during the termination proceedings, Claimant made claims that he has continued pain and residual medical problems from his disc herniation and, thus, we also must consider that injury. In this regard, we derive guidance from *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167 (Pa.Cmwlth.1998). In *Murphy*, we noted that an employer's burden in a termination petition is considerable and never shifts to the claimant because disability is presumed to continue until demonstrated otherwise. We further noted that where a claimant continues to complain of pain, the employer's burden is met when it presents unequivocal medical testimony that the " 'claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain *or link them to the work injury.*' " *Murphy*, 721 A.2d at 1170 (emphasis added) (quoting *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 326, 705 A.2d 1290, 1293 (1997)); *see also Jordan v. Workmen's Compensation Appeal Board (Consolidated Electrical Distributors)*, 550 Pa. 232, 704 A.2d 1063 (1997).

Here, Employer's burden went beyond proving that Claimant fully recovered from the August 13, 1994 lumbosacral strain. Employer was required also to prove by unequivocal medical testimony that Claimant's complaints of a disc herniation were

---

5. Dr. Smith's affidavit of recovery actually indicates that Claimant fully recovered as of August 13, 1995. (R.R. at 75a.) However, at his deposition, Dr. Smith testified that he erroneously wrote August 13, 1995 on the affidavit of recovery and that the correct date is October 2, 1995. (R.R. at 52a.)

not related to Claimant's August 13, 1994 work injury. *See Murphy.*

After reviewing Dr. Smith's entire testimony, we must agree with the WCAB that Dr. Smith's statements on direct examination regarding a disc herniation at the L5–S1 level are inconsistent with Dr. Smith's statements of this matter on cross-examination. On direct examination, Dr. Smith testified that, although Claimant's discogram and post-discogram reports suggest a disc herniation at the L5–S1 level, Claimant exhibited no evidence to suggest he incurred a disc herniation as a result of his work-related injury and, thus, Dr. Smith could not make a diagnosis of herniation. (WCJ's Findings of Fact, No. 5.) On cross-examination, Claimant's counsel questioned Dr. Smith about the disc herniation, and the following exchange took place:

> Q: Doctor, I wasn't clear from what you testified on Direct. Are you stating that, in your opinion, [Claimant] does not have a central disc herniation at L5–S1?
>
> A: At the time that I saw [Claimant] I couldn't make that diagnosis, no, sir. Either based on my clinical exam and based on the normality of the myleogram and CT Scan at that point.
>
> Q: I'm asking you today?
>
> A: Oh, today. Given the information that's present on the discogram I have to assume that he does, in fact, have some evidence of a...central disc herniation...at the L5–S1 level based on the discogram alone.
>
> Q: Doctor, you'd agree with me, wouldn't you that, based upon the history of [Claimant's] injury and the onset of pain on August 13, 1994, it is quite possible that that herniation occurred at that time.
>
> A: I think that everything I see depicted reflects the likelihood that there's a disc

degeneration present at L5–S1 level. And I think that his first onset of symptoms of that degenerative disc may well have come on that date. But to say that that date led to a degenerative disc, I don't think I could make that statement with certainty.

> Q: Doctor, would you feel more comfortable stating that his activity at that time aggravated the condition and caused his condition to become symptomatic?
>
> A: I think that would be a true statement, yes, sir.

(R.R. at 63a–64a.) Contrary to Dr. Smith's direct examination testimony that he could not diagnose Claimant as suffering from a disc herniation at the time of his exam, this exchange reveals that Dr. Smith now believes that Claimant, in fact, has a disc herniation and that it resulted from Claimant's work activities on August 13, 1994 which aggravated Claimant's disc degeneration and caused it to become symptomatic.

Because of the contradictory and inconsistent statements between Dr. Smith's direct and cross examination testimony, we conclude that Dr. Smith's testimony, taken as a whole, is equivocal with respect to Claimant's disc herniation. Thus, because equivocal evidence is not competent evidence, Employer failed to satisfy its burden of proving entitlement to a termination of Claimant's benefits. Because Employer failed to satisfy its burden, the WCAB properly reversed the WCJ's decision to grant Employer's petition for termination of benefits. However, because Dr. Smith credibly testified that Claimant is not disabled from the lumbosacral strain or the disc herniation in that Claimant can return to work without restriction, Employer may be entitled to a suspension of Claimant's benefits, depending on the availability of jobs for Claimant.[6]

6. We note that Claimant indicates in his "Answer to Petition for Supersedeas" that he returned to work on March 10, 1997 in a light duty position. (10/23/98 Answer to Petition for Supersedeas, ¶ 11.) While this issue is not presently before us, we point this out so that the WCJ considers Claimant's job status when

Accordingly, we affirm the order of the WCAB and we remand this case to the WCAB to remand to the WCJ for disposition consistent with this opinion.

*ORDER*

AND NOW, this 15th day of April, 1999, the order of the Workers' Compensation Appeal Board (WCAB) reversing the termination of Gary Anderson's benefits, dated July 27, 1998, is hereby affirmed. Further, this case is remanded to the WCAB to remand to the workers' compensation judge for the taking of additional evidence and for the making of additional findings of fact and conclusions of law with respect to whether Indian Creek Supply and the State Workers' Insurance Fund are entitled to a suspension or modification of benefits as of March 10, 1997.

Jurisdiction relinquished.

Dissenting opinion by Judge LEADBETTER.

LEADBETTER, Judge, dissenting.

I respectfully dissent. As this court has noted:

> Recently, our Supreme Court held, in *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995), that an employer is entitled to suspension of a claimant's benefits when the claimant is capable of returning to his or her time-of-injury job with residual disability even if the employer has not shown job availability.

*Pan Bldg. Corp. v. Workmen's Compensation Appeal Bd. (Thompson)*, 698 A.2d 697, 700 (Pa.Cmwlth.1997). *See also* David B. Torrey and Andrew E. Greenberg, Pennsylvania Workers' Compensation: Law and Practice, § 11:137A (1998). Since the credited testimony here is that claimant can return to his pre-injury job without restriction, I would not remand for

a determination of job availability, but would simply order suspension of benefits.

determining whether Employer is entitled to a suspension of Claimant's benefits.