# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sean Connolly, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1187 C.D. 2016 |
| | : | Submitted: December 30, 2016 |
| Workers' Compensation Appeal | : | |
| Board (Craft Oil Corporation), | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                         **FILED:  April 21, 2017**

Petitioner Sean Connolly (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of Workers' Compensation Judge Kathleen DiLorenzo (WCJ), granting Craft Oil Corporation's (Employer) petition to terminate compensation benefits. We now affirm.

On August 27, 2012, while working as a delivery truck driver for Employer, Claimant was injured in a motor vehicle accident.  An amended notice of compensation payable, dated October 8, 2012, indicates that Claimant received workers' compensation benefits beginning on August 28, 2012, and that Employer accepted liability for a strain affecting Claimant's right thumb, neck, and back.

On July 3, 2013, Claimant filed two "petitions for review of utilization review determination" in which he requested a review of the

reasonableness and necessity of his medical treatment, including physical therapy, injections, and ongoing treatment (Review Petitions). Employer denied that certain medical treatments were reasonable and necessary. On November 19, 2013, Employer filed a petition to terminate compensation benefits (Termination Petition), alleging that Claimant had made a full recovery from the work injury as of October 20, 2013. The petitions were assigned to the WCJ, who conducted hearings.

Employer submitted into evidence the deposition testimony and a physician's affidavit of recovery from Stanley Askin, M.D. Claimant testified at each of the three hearings before the WCJ and presented as evidence the deposition testimony of two chiropractors, Raymond Wisdo, D.C., and Gary Young, D.C., along with the deposition testimony of Bruce Grossinger, D.O., and Michael Ferder (Ferder), a Certified Functional Evaluator.

Dr. Askin testified that he examined Claimant on October 15, 2013. He reviewed Claimant's previous medical records and, during the examination, took oral medical history from Claimant. During the examination, Dr. Askin noted that Claimant walked with a limp, favoring his right leg, and described pain in his mid and lower back. Claimant also demonstrated a limited ability to bend forward and to either side. Dr. Askin stated that there was a "measurable difference" in the sizes of Claimant's calf muscles, but he had no explanation for the disparity. (Reproduced Record (R.R.) at 24a.) Dr. Askin noted that Claimant was five feet, eleven inches tall and weighed over 400 pounds at the time of the examination. He opined that some physical abnormalities were not unusual for a person of Claimant's size and weight.

2

On cross-examination, Claimant presented Dr. Askin with a document entitled "Common Single Nerve Root Syndromes" and asked whether an injury to a particular spinal nerve, Lumbosacral for Fifth Lumbar or L5, could result in atrophy of the right calf muscle. Dr. Askin answered that such an injury could result in muscle atrophy. During Dr. Askin's examination, Claimant also presented with limited shoulder mobility due to neck pain and some loss of feeling and mobility in his right hand. Dr. Askin additionally stated that an MRI image of Claimant's back showed no traumatic change in his neck or back that would account for Claimant's pain or lack of mobility. Dr. Askin stated that he was aware that Claimant had undergone surgery to repair the damaged ligaments of his right hand and thumb. After determining that the surgery on Claimant's right hand had been successful, Dr. Askin concluded that Claimant had fully recovered from the accepted work injury to his right thumb, neck, and back.

Claimant testified that he does not fully recall the accident on August 27, 2012, and that he did not feel pain in his hand or soreness in his back until the days following the accident. He received treatment from an occupational therapy center following the accident, followed by treatment from his chiropractors. In December 2012, Drs. Wisdo and Young began treating Claimant for pain in his neck and back, headaches, and numbness and tingling down his leg. Claimant's chiropractors treated him with spinal alignments, stretching, electronic muscle stimulation, and other exercises. Claimant also received muscle relaxant injections and narcotic medications to treat his back pain. Claimant stated that the treatments partially alleviated the pain and stiffness in his back, but that he still had numbness and tingling sensations in his right leg. Claimant noted that he underwent hand surgery in May 2016 to attempt to alleviate the pain and loss of

3

function in his right hand. Following the surgery, Claimant's hand became infected, requiring antibiotics and physical therapy for his hand. Claimant stopped seeing his chiropractors for physical therapy following his surgery because he experienced sickness and nausea as a result of the infection and antibiotic treatment. Claimant stated that he was unable to drive for periods of longer than 30 minutes due to the numbness in his leg and was unable to take the physical examination for his driver's license certification renewal. Claimant also presented documentation of several jobs to which he had applied in 2014.

Dr. Grossinger stated that he began seeing Claimant on January 2, 2013, after Claimant's pain management provider referred Claimant to him. Dr. Grossinger performed two EMGs of the upper and lower extremities and reviewed the results of Claimant's lumbar MRI. After reviewing the results of the MRI and the EMGs, Dr. Grossinger diagnosed Claimant with a moderate right L5 radiculopathy, aggravation of disc spur complexes at L4-5, lumbar facet syndrome, sacroiliac dysfunction, and a cervical injury which had resolved. Dr. Grossinger treated Claimant with three lumbar epidural injections, sacroiliac injections, selective nerve-root blocks, and medication including Oxycodone, Kadian, and Ambien. Dr. Grossinger stated that, as of October 15, 2013, Claimant was not fully recovered from his work injury and was not able to return to his position as a truck driver. In his last report, dated March 10, 2014, Dr. Grossinger concluded that Claimant had partially recovered and was able to work part-time, for 20 hours per week, in a sedentary or light-duty job. Dr. Grossinger stated that he agreed with Dr. Askin's finding that there was a disparity between the sizes of Claimant's calf muscles; however, Dr. Grossinger attributed the disparity to

4

atrophy of the right calf caused by an injury to the L5 vertebrae. Dr. Grossinger additionally ordered a functional capacity evaluation for Claimant.

Ferder stated that he evaluated Claimant on April 10, 2014, after Dr. Grossinger referred Claimant to him. In evaluating Claimant, Ferder relied only on Dr. Grossinger's diagnosis and did not review any other reports from other physicians. Ferder assessed Claimant's mobility, his ability to lift weight, and his tolerance for extended periods of sitting down. Based on his evaluation, Ferder concluded that Claimant was able to work in a light-duty job.

By opinion circulated on January 7, 2014, the WCJ granted Claimant's Review Petitions, ordering Employer to pay Claimant total disability benefits as well as litigation expenses and reasonable medical expenses incurred up to October 15, 2013. The WCJ further granted Employer's Termination Petition, ordering Claimant's workers' compensation benefits terminated as of October 15, 2013.

Claimant appealed to the Board, arguing that the WCJ erred in granting Employer's Termination Petition.[1] By opinion mailed on June 20, 2016, the Board affirmed the WCJ's order, reasoning that the WCJ issued a reasoned decision and accepted the testimony of Dr. Askin as more credible than Claimant's experts.

On appeal,[2] Claimant raises the following issues: (1) whether the WCJ issued a well-reasoned decision; (2) whether the WCJ erred in determining

_____

[1] Employer did not appeal the portion of the WCJ's order granting Claimant's Review Petitions.

[2] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether **(Footnote continued on next page…)**

5

that Claimant had fully recovered from his work-related injury despite accepting medical testimony that Claimant still suffered from an ongoing injury; and (3) whether the WCJ erred by failing to expand the scope of Claimant's injury beyond the injuries described in the notice of compensation payable.

Claimant first argues that the WCJ failed to issue a well-reasoned decision as required by Section 422 of the Workers' Compensation Act (Act).[3] Claimant contends that the WCJ failed to articulate why she found Dr. Askin's testimony more credible than the testimony of Dr. Grossinger and Ferder. Claimant also notes that, despite the WCJ's numerous findings of fact, the majority of the facts were related to Claimant's Review Petitions rather than the Termination Petition now on appeal.

---

**(continued…)**

necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Bond v. Workers' Comp. Appeal Bd. (Belmont Center)*, 711 A.2d 554, 557 n.6 (Pa. Cmwlth. 1998).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. Section 422 of the Act provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

6

We first note that the WCJ's decision may be well-reasoned even if facts in the record could support a finding contrary to the conclusion reached by the WCJ. *Williams v. Workers' Comp. Appeal Bd. (USC-Corp.-Fairless Works)*, 862 A.2d 137, 143-44 (Pa. Cmwlth. 2004). In order for a WCJ's decision to be well-reasoned within the meaning of Section 422 of the Act, the decision must clearly and concisely state the rationale for the WCJ's decision, such that an appellate court may discern the WCJ's reasons for reaching a particular result. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). The WCJ must make findings of fact and give reasons for accepting or rejecting evidence, including reasons why the WCJ accepted the testimony of one witness over the testimony of another. *Id.; Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 402-03 (Pa. Cmwlth. 2015).

Claimant argues that the WCJ accepted Dr. Askin's conclusion that Claimant was fully recovered and rejected Dr. Grossinger's explanation of Claimant's condition without any explanation why she relied upon Dr. Askin's testimony over Dr. Grossinger's testimony. This argument, however, is not supported by the WCJ's opinion. The WCJ stated in her opinion that she found Dr. Askin's reading of the MRI results to be more reliable than Dr. Grossinger's because Dr. Askin conducted a more comprehensive review of Claimant's medical records, had greater experience as an orthopedic surgeon, and conducted a more thorough physical examination. (R.R. at 230, 235.) The WCJ further described in detail the reasons why she found Dr. Askin's testimony credible and the specific testimony she used in reaching her conclusion. (R.R. at 231-233.) The WCJ's opinion clearly and concisely explains the rationale for the decision, including why the WCJ found Dr. Askin's testimony more credible than Dr. Grossinger's

7

testimony. Thus, the WCJ issued a reasoned decision within the meaning of Section 422 of the Act.

Claimant next argues that the WCJ erred in determining that Claimant had fully recovered from his work-related injury despite accepting medical testimony that Claimant still suffered from an ongoing injury. Essentially, Claimant argues that the WCJ's decision was not based on substantial evidence because Dr. Askin's medical testimony was equivocal. In a termination petition proceeding, the employer bears the burden of proving, through substantial, competent, credible medical testimony, that a claimant's disability has ceased or that any remaining disability is no longer related to the work injury. *McFaddin v. Workmen's Comp. Appeal Bd. (Monongahela Valley Hosp.)*, 620 A.2d 709, 711 (Pa. Cmwlth. 1993). In order for medical testimony to constitute competent medical evidence, such testimony must be unequivocal. *Galbreath v. Workmen's Comp. Appeal Bd. (Gordon)*, 627 A.2d 287, 290 (Pa. Cmwlth. 1993), *appeal denied*, 644 A.2d 165 (Pa. 1994). Whether medical testimony is equivocal is a question of law, fully reviewable by this Court, and is to be determined by reviewing the entire testimony of the medical witness. *Id.* A termination of benefits is proper where the employer proves that the claimant fully recovered from the work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury. *Campbell v. Workers' Comp. Appeal Bd. (Antietam Valley Animal Hosp.)*, 705 A.2d 503, 506-507 (Pa. Cmwlth. 1998).

As noted above, the WCJ found Dr. Askin's testimony credible and relied on that testimony in determining that Claimant had fully recovered from his work-related injury. Claimant notes, however, that Dr. Askin acknowledged that

8

Claimant had a physical abnormality−*i.e.* a substantial difference in the sizes of Claimant's calf muscles−yet Dr. Askin stated that he did not have an explanation for the difference in size. Claimant argues "where a medical expert offers the opinion that someone has fully recovered but does not offer unequivocal medical testimony that the other condition is not related to the work injury, the finding by the WCJ that the Claimant has fully recovered is not supported by substantial competent medical evidence." (Claimant's Br. at 16.) Dr. Askin, however, testified that he had no explanation for the disparity in the size of Claimant's calf muscles after a thorough review of Claimant's medical history and a physical examination. Dr. Askin did not equivocate by stating that the atrophy *could have* been caused by Claimant's work related injury. *Simons v. Workmen's Comp. Appeal Bd.*, 415 A.2d 1290, 1291 (Pa. Cmwlth. 1980) (holding that statements by medical expert that assigned cause "could have" been the cause of condition are legally insufficient). Instead, Dr. Askin testified that there was no medically identifiable reason for the disparity in the sizes of Claimant's calf muscles and that there was no identifiable radiculopathy which could have caused atrophy in the right calf muscle. (R.R. at 7a, 31a.) Thus, the WCJ did not err in concluding that Employer had satisfied its burden of proving, by substantial, competent, and credible medical testimony that Claimant had recovered from his work-related injury.[4]

---

[4] Claimant cites our decision in *Indian Creek Supply v. Workers' Compensation Appeal Board (Anderson)*, 729 A.2d 157 (Pa. Cmwlth. 1999), *appeal denied*, 757 A.2d 936 (Pa. 2000), for the proposition that when an expert medical witness recognizes the existence of a medical condition in an area that was affected by the work-related injury, the employer must prove through unequivocal medical testimony that the recognized medical condition is not related to the work injury. Our holding in *Indian Creek*, however, is inapposite to the instant case. In *Indian Creek*, the employer's expert witness testified on direct examination that he could not

**(Footnote continued on next page…)**

Finally, Claimant argues that the WCJ erred by failing to expand the scope of Claimant's injury beyond the injuries described in the notice of compensation payable. The amended notice of compensation payable listed Claimant's injuries as strains of the thumb, neck, and back. Claimant argues that the injury to his thumb was misclassified because he required surgery to repair a damaged ulnar collateral ligament in his right thumb, which demonstrates that the injury was more than a simple strain.

A claimant may seek to modify the scope of a notice of compensation payable by filing a petition to modify the notice, which is treated the same as if such petition were an original claim petition. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). Alternatively, a WCJ may modify a notice of compensation payable if the claimant establishes that the original notice of compensation payable was materially incorrect when issued. *Samson Paper Co. & Fidelity Engraving v. Workers' Comp. Appeal Bd. (Digiannantonio)*, 834 A.2d 1221, 1224-25 (Pa. Cmwlth. 2003). The WCJ, however, does not have the authority under this approach to include injuries that developed over time as a result of the injury; instead, only injuries that existed at

---

**(continued…)**

diagnose the claimant as suffering from a disc herniation at the time of his exam but stated on cross-examination that the claimant's work activities likely aggravated the claimant's disc degeneration and caused it to become symptomatic. We held that such contradictory testimony is equivocal and, thus, is not competent medical testimony. *Indian Creek Supply*, 729 A.2d at 162. In the present case, Dr. Askin testified consistently that there was a significant difference in the diameter of Claimant's calf muscles, a physical abnormality rather than an injury, and stated simply that he found no medical explanation for the disparity. Thus, unlike the expert witness in *Indian Creek*, Dr. Askin did not contradict himself or equivocate by recognizing the mere existence of Claimant's disparately sized musculature.

10

the time the notice of compensation payable was issued may be addressed. *Westmoreland Cnty*., 942 A.2d at 217.

We need not consider the merits of Claimant's argument that the WCJ erred by declining to expand the scope of Claimant's injury, because Claimant has waived this argument by failing to raise it in his appeal to the Board. The law is clear that issues not raised in a party's appeal to the Board are waived and cannot be considered by this Court. *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1230 (Pa. Cmwlth. 2011). Claimant's appeal to the Board asserted only the two allegations of error discussed above: that the WCJ erred by failing to issue a reasoned decision and that the WCJ failed to base her conclusion on unequivocal, competent medical testiomony. (*See* R.R. at 245a.)[5]

Accordingly, the order of the Board, affirming the order of the WCJ, is affirmed.

_____
P. KEVIN BROBSON, Judge

---

[5] Even if Claimant's argument that the WCJ erred in failing to expand the scope of Claimant's injury was not waived, such an argument is without merit. The WCJ accepted the testimony of Dr. Askin and rejected Dr. Grossinger's testimony. Dr. Askin did not testify that Claimant's injury was misclassified in the amended notice of compensation payable or that any amendment of the injury description was appropriate. Thus, the WCJ did not err in failing to expand the scope of Claimant's injury.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Sean Connolly,                                     :
                              Petitioner           :
                                                   :
              v.                                   :    No. 1187 C.D. 2016
                                                   :
Workers' Compensation Appeal                       :
Board (Craft Oil Corporation),                     :
                              Respondent           :


# **O R D E R**


AND NOW, this 21st day of April, 2017, the order of the Workers' Compensation Appeal Board in the above matter is AFFIRMED.


<br>

_____
P. KEVIN BROBSON, Judge